## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ANTRELL A. TEEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17-cv-594-JPG |
| | ) | |
| ST. CLAIR COUNTY JAIL, | ) | |
| PHILLIPH MCLAUREN, | ) | |
| SGT. NICHOLS, | ) | |
| CAPTAIN KENNY, | ) | |
| ARAMARK, | ) | |
| MARY DAVIS, | ) | |
| NURSE DEBORAH, | ) | |
| NURSE BRANDY, | ) | |
| NURSE ROBIN, | ) | |
| NURSE BARBARA, | ) | |
| NURSE APRIL, | ) | |
| SGT. MASSEY, | ) | |
| C/O JOHNSON, | ) | |
| and ST. CLAIR COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Antrell Teen, an inmate who is currently incarcerated at St. Clair County Jail ("Jail"), brings this *pro se* action for alleged violations of his constitutional rights under 42 U.S.C. § 1983. (Doc. 15). Several claims from Plaintiff's original Complaint (Doc. 1) were severed from this action pursuant to *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). The counts remaining in this action were dismissed. Plaintiff filed a First Amended Complaint on September 25, 2017. (Doc. 15). This case is now before the Court for a preliminary review of the First Amended Complaint pursuant to 28 U.S.C. § 1915A.

Under Section 1915A, the Court is required to promptly screen prisoner complaints to

filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.*

### The Complaint

In his First Amended Complaint (Doc. 15), Plaintiff makes the following allegations[1]: Plaintiff has been incarcerated in St. Clair County Jail ("Jail") from December 2015 up to the present. (Doc. 15, p. 6). During this time, Jail policies have not been followed by staff, administrators, and faculty. *Id.* Detainees have been deprived of a grievance procedure, a sick call procedure, and the law library, inmate safety has been compromised, prison conditions are poor, and the obligation to provide basic human needs at the Jail has not been met. *Id.*

**A.**     *Grievance Procedure*

Plaintiff has complained repeatedly to Philliph McLauren, but he disregards such complaints "by not acknowledging complaints or grievance request[s] which violates due process." *Id.* "There is no definitive process to rectify these deprivations . . . which leaves [Plaintiff] and other inmates at risk of harm." *Id.* St. Clair County Jail, directed by St. Clair County, has an "unofficial custom to deprive inmates by their employees." *Id.* The lack of a requirement that employees follow Jail guidelines "causes these torts which collectively shows a

---

[1] At times, Plaintiff's allegations are unclear. The recitation of facts herein attempts to convey the meaning behind Plaintiff's allegations, to the extent his meaning is decipherable.

pattern of deprivation even after being aware." *Id.* "Because of this custom to avoid, not acknowledge, and disregard serious issues without changing procedures to protect inmates, St. Clair County and Prison Administration are believed to be the proper" defendants. *Id.*

During his time at the Jail, Plaintiff has asked Supervisor Nichols for a grievance and was denied. *Id.* He has complained to Captain Kenny and Major McLauren in writing and asked for a grievance hearing and was ignored. *Id.* Plaintiff "notified the highest authority and his constituents multiple times about deprivations mentioned herein and no relief was given" so "they participated in furthering . . . these deprivations and contributed [to them] by disregarding [and] not acknowledging major issues that denied [Plaintiff] of [his] constitutional rights, basic human needs, safe conditions, [and] access to the courts." *Id.*

### B. Dental Care

During Plaintiff's initial medical screening, he informed the intake nurse Brandy about his "oral needs, severe pain, infection, inability to eat on either side of [his] mouth, [and] needing a soft diet." (Doc. 15, p. 7). Plaintiff's "medical needs for dental help went unattended from December 2015 until [they were] finally treated December 2016." *Id.* During that year, Plaintiff experienced agonizing pain. *Id.* Plaintiff sent sick call requests for help to Brandy, Barbara, and others. He also submitted sick call requests on the kiosk located on the cellblock. *Id.* He believes Nurse Deborah and Robin view sick call requests and are supposed to book appointments so inmates can receive help. *Id.* Plaintiff submitted over 20 sick call requests but did not see a dentist for a year because the nurses responsible for setting appointments disregarded his requests. *Id.* "This custom of disregarding the complaints of inmates causes deprivation to medical needs." *Id.*

## C. Eye Care

Plaintiff placed sick call requests to Barbara and April, and on the kiosk in the cell block, about eye irritation, soreness, and redness. *Id.* While he was in the shower, "black mold, rust, peeling paint, insects, and other unknown particles became airborne and got into [Plaintiff's] eye." *Id.* The nursing staff was notified about the issue around February 6, 2016, but he has not been seen or treated for the issue. *Id.* Nurse Deborah and Robin "are responsible for setting appointment[s] and calling inmates to see a doctor. Treatment is denied by these nurses." *Id.*

## D. Stomach Issues

Plaintiff submitted sick call requests in February 2016 and February 2017 for vomiting, nausea, and diarrhea on the kiosk in the cell block. *Id.* "There was a water boil for St. Clair County and there was no procedure in place to care for inmates during such a time and [Plaintiff] was allowed to drink polluted water for days." *Id.* Plaintiff went untreated and his needs were disregarded, "which is a patterned tactic used by nurse[s] at St. Clair County Jail." *Id.* Robin and Deborah are responsible for setting appointments and getting inmates help. *Id.*

## E. Inadequate and Unsanitary Food

Plaintiff has not received a nutritionally adequate diet during his time at the Jail. (Doc. 15, p. 8). No fruit has been provided on breakfast, lunch, and dinner trays since December 2015. *Id.* Mary, the kitchen supervisor, "knows what is served daily because the menu doesn't change. Mary knows what is required for a balanced meal and sees that the food prepared isn't nutritionally balanced." *Id.* Plaintiff has submitted complaints about the issue to Mary, but he has not received a response. *Id.*

The food in St. Clair County is also prepared under unsanitary conditions. *Id.* Inmates have informed Mary of this and were told to ignore the issue and not "say anything harmful

when inspectors come or they will lose their tender kitchen position." *Id.* A kitchen employee witnessed a health inspector find a violation, point it out to Mary and McLauren, and give them a passing score regardless. *Id.* He also witnessed McLauren sign off on the document. *Id.* At the time of the inspection, "stoves were broke, mold was in the kitchen and [an] infestation." *Id.* Plaintiff has witnessed workers not wearing gloves while preparing food, trash in the cooler after an inmate drank the juice, and trash and old food mixed in the ice. *Id.* Plaintiff was fed black-eyed peas with maggots, and there are "filthy spouts on coolers" that are "never cleaned but used daily." *Id.* Plaintiff also believes non-sterile items are used to prepare food. *Id.* "These habits occur daily and amount to a systemic problem. All issues have been complained about and addressed to Mary and McLauren but [Plaintiff] receive[s] no response." *Id.*

Aramark contributes to inmates having "diets well below nutritional value by distributing low quality food to St. Clair County Jail." *Id.* Aramark is aware "that the food they distribute is not fresh, lack[s] shelf life, [and is] low quality through complaints made by [Plaintiff] and others. Past lawsuits against Aramark show a custom of providing inadequate food to save their customer, St. Clair County, money." *Id.* This "custom is the moving force causing the deprivation" and "this directive is given by Mary." *Id.* Even though Plaintiff complained about this to McLauren, he disregarded the complaints. *Id.*

### F. Cell Emergency Buttons

There are no emergency buttons in the cells at the Jail. (Doc. 15, p. 9). Inmates are locked in their cells for "10 plus hours," with officers only present every thirty minutes and no cameras equipped. *Id.* In the event of an emergency, inmates must kick the doors and scream for help. *Id.* This issue has been the subject of complaints to Kenny and McLauren. *Id.* Several inmates faced medical emergencies for which they had to wait fifteen minutes or more to be

5

treated. *Id.* The Jail employees involved in these situations included Nichols, Wagner, April, and Cook. *Id.* Plaintiff also gave a complaint to Nichols and Cook on the issue. *Id.* "Faculty, staff, and administrators know of these unsafe conditions but keep [Plaintiff]/inmate[s] in these unsafe conditions." *Id.*

### G. *Unsanitary Block Conditions*

Plaintiff has asked block officers for cleaning supplies to address the unsanitary conditions on his block for months. *Id.* "There are 20 cells, 4 showers, 2 day room urinals, 8 day room tables, [and] 2 decks that need to be kept clean. When cleaning supplies are brought at the officer's discretion, there is one bucket with little solution and less than half of a Styrofoam cup with Comet. There is no way to clean black mold in the showers, fecal matter on toilets, [and] clean the dining area with the minimal cleaning supplies provided." *Id.*

Plaintiff complained through captain complaints asking for adequate cleaning supplies for the size and population of the block, but he still does not "receive the minimal supplies on a daily basis." *Id.* Plaintiff asked for supplies and complained about this to Johnson on September 7 and 12, 2017, Masse on September 7, 2017, and Smith on September 13, 2017. *Id.* On September 17, 2017, "Jerry looked at the captain complaint and threw it back on the table." *Id.* In December 2016, Plaintiff was housed in the infirmary "where there was fecal matter on the toilet for days/week until complaining and Lt. Fulton gave [them] bleach. Sgt. Nichols was informed by complaint form and did nothing to help [them]." *Id.*

Plaintiff seeks monetary damages from the defendants. (Doc. 15, p. 10).

## **Discussion**

Based on the allegations in the original Complaint, in its previous Order (Doc. 12), the Court designated 11 counts in this *pro se* action. Count 1, for failure to provide access to an

adequate grievance procedure, was dismissed with prejudice. Counts 4, 5, 6, 8, 9, and 10, for health risks due to boil orders, law library access, broken cell locks, and unsanitary conditions of confinement, including mold and paint from the showers getting into Plaintiff's eyes, were severed from this action. The defendants associated with these counts, Smith, Kenny, Masseo, Nichols, Boujack, Lazante, and Cook, were dismissed with prejudice from this action and included as defendants in the severed actions. St. Clair County Jail and St. Clair County Jail Medical Staff were also dismissed with prejudice from this action.

The Court will not consider any claims against Smith, Kenny, Masseo, Nichols, Boujack, Lazante, Cook, St. Clair County Jail, and St. Clair County Jail Medical Staff, and to the extent Plaintiff has named any of them as defendants once again, they will be dismissed with prejudice as they were before. The Court will also not consider claims related to the boil orders in February 2016 and 2017, or their alleged negative effects, the inadequate grievance procedure at the Jail, or the unsanitary conditions of confinement in the living areas of the Jail, including the alleged mold and peeling paint in the showers and the health risks related thereto. If Plaintiff seeks to bring claims against the defendants who were previously dismissed with prejudice, or on the issues that were severed from this action, he is free to do so in the relevant severed cases.[2] Because the facts underlying the only claims against Johnson and Massey, to the extent he is the same person as Masseo, are related to those that have been previously severed from this action, these defendants will also be dismissed from this action without prejudice.

Given the allegations in Plaintiff's First Amended Complaint, and the multiple counts that were severed and dismissed from this action with prejudice in this Court's previous Order,

---

[2] For example, Plaintiff's claims related to the mold and paint in the showers and unsanitary conditions of confinement in the living areas at the Jail were severed into 17-cv-918-JPG and will not be considered in this case. Plaintiff's claims related to the boil order at the Jail and his subsequent medical issues were severed into 17-cv-916-JPG and will also not be considered herein.

the Court will designate entirely new counts for this action going forward. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

> **Count 1 –** *Monell* claim against St. Clair County for maintaining an unofficial custom and/or policy of allowing its employees to violate Jail policies and disregard serious inmate issues.
>
> **Count 2 –** Deliberate indifference to medical needs claim against Brandy, Barbara, Deborah, and Robin for failing to provide adequate dental care to Plaintiff after he repeatedly complained of dental issues.
>
> **Count 3 –** Unconstitutional conditions of confinement claim against Aramark, Davis, and McLauren for failing to provide adequate nutrition for inmates in the meals provided at the Jail.
>
> **Count 4 –** Unconstitutional conditions of confinement claim against Davis and McLauren for subjecting Plaintiff to health risks from poor sanitation in the kitchens at the Jail and contaminated food.
>
> **Count 5 –** Unconstitutional conditions of confinement claim against April and McLauren for failing to include emergency buttons in the cells.

To the extent Plaintiff sought to bring claims against individuals or entities not included in the case caption, these individuals or entities will not be treated as defendants in this case, and any claims against them should be considered dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (defendants must be "specif[ied] in the caption"). Individuals mentioned in the Complaint but not included in the case caption or list of defendants include: Wagner, Fulton, and Jerry. Further, any claims not addressed herein should be considered dismissed without prejudice from this action.

### Count 1 – St. Clair County

Section 1983 imposes liability on "any person" who, under color of state law, deprives another of rights protected by the Constitution. In *Monell*, the Supreme Court held that Congress intended municipalities and other local government entities to be included among those persons

to whom § 1983 applies. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978). In order to obtain relief against a municipality, a plaintiff must allege that the constitutional deprivations were the result of an official policy, custom, or practice of the municipality. *Monell,* 436 U.S. 658, 691 (1978); *see also Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006). "A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.

Plaintiff is very vague in his description of the alleged custom perpetuated by St. Clair County that he believes resulted in the violation of his rights. Plaintiff seems to be claiming that St. Clair County perpetuates a general custom of ignoring inmate issues. This is an incredibly vague assertion. To the extent Plaintiff is claiming that the alleged custom of ignoring grievances, or failing to provide inmates access to an adequate grievance procedure, stemmed from St. Clair County, the Court dismissed with prejudice claims of this sort, regarding the grievance procedure, in its previous Order in this case. *See* (Doc. 12, pp. 8-9).

Further, to the extent Plaintiff is trying to bring a *Monell* claim against St. Clair County for having a custom of failing to enforce its own policies amongst its employees at the Jail, Jail officials' failure to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992). *See also Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007).

Because Plaintiff's description of the custom or policy allegedly perpetuated by St. Clair County Jail is incredibly vague, as is his connection between this custom and any constitutional deprivations, the Court finds that Plaintiff failed to state a claim upon which relief may be

9

granted with respect to his *Monell* claim against St. Clair County. Count 1 will therefore be dismissed without prejudice.

## Count 2 – Dental Care

As noted in the Court's previous Order, Plaintiff's constitutional rights, as a pretrial detainee, are derived from the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. *See, e.g.*, *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2475 (2015); *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013). Although claims brought pursuant to § 1983, when involving detainees, arise under the Fourteenth Amendment and not the Eighth Amendment, *see Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000), the Seventh Circuit has "found it convenient and entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) 'without differentiation.'" *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 845 n.2 (7th Cir. 1999)).

A prisoner raising a claim against a prison official for deliberate indifference to the prisoner's serious medical needs must satisfy two requirements. The first requirement compels the prisoner to satisfy an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious[.]'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The second requirement involves a subjective standard: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that amounts to "'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 297).

Whether Plaintiff has satisfied these requirements with respect to his claims against Brandy, Barbara, Deborah, and Robin for failing to provide Plaintiff with dental care, or otherwise arranging for it, this claim is entirely distinct from the other claims in this action. It

10

will therefore be severed from this case pursuant to *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). *See also Wheeler v. Talbot*, -- F. App'x --, 2017 WL 2417889 (7th Cir. 2017) (district court should have severed unrelated and improperly joined claims or dismissed one of them).

### **Count 3 – Inadequate Nutrition**

In a case involving conditions of confinement in a prison, two elements are required to establish a violation of the Eighth Amendment's cruel and unusual punishments clause. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The second requirement is a subjective element—establishing a defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Farmer*, 511 U.S. at 837, 842. Likewise, for "cruel and unusual punishment" claims brought by a pretrial detainee, the plaintiff must show that the jail officials knew that the plaintiff was at risk of serious harm, and that they disregarded that risk by failing to reasonably discharge the risk. *Grieveson v. Anderson*, 538 F.3d 763, 771-72, 777-79 (7th Cir. 2008).

A deprivation of a basic human need—food, medical care, sanitation, or physical safety—is necessary to establish the objective component of unconstitutional conditions of confinement claims. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *see also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). Specifically relevant to this case, the Constitution mandates that prison officials provide inmates with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985). Further, the Seventh Circuit has held that seemingly conclusory allegations claiming

11

prison food "is well below nutritional value" or that inmates are served a "nutritionally deficient diet" are enough to satisfy the objective component of a claim for deliberate indifference. *See Smith v. Dart*, 803 F.3d 304, 312 (7th Cir. 2015) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996)).

To survive preliminary review, the First Amended Complaint must also satisfy the subjective requirement by suggesting that Aramark, Davis, and McLauren exhibited deliberate indifference to the conditions of Plaintiff's confinement by causing or participating in the alleged constitutional deprivations. *See Pepper*, 430 F.3d at 810. A plaintiff may not attribute any of his constitutional claims to a high-ranking official by relying on the doctrine of *respondeat superior*, or vicarious liability; "the official must actually have participated in the constitutional wrongdoing." *Antonelli*, 81 F.3d at 1428 (citing *Cygnar v. City of Chicago*, 865 F.2d 827, 947 (7th Cir. 1989)). Plaintiff's allegations regarding the nutritional value of the food provided at the Jail satisfy both the objective and subjective requirements at this stage. Count 3 will therefore proceed against Aramark, Davis, and McLauren.

## Count 4 – Unsanitary Kitchen Conditions and Contaminated Food

As noted herein, the Constitution requires food served to inmates to be prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." *French*, 777 at 1255. Further, contaminated food may pose a serious risk to an inmate's health. Although one spoiled or contaminated meal will usually not deprive an inmate of basic nutritional needs, it may compromise his health and result in unnecessary pain and suffering. *Chavis v. Fairman*, 51 F.3d 275, *3 (7th Cir. 1995) ("Unlike the persistent provision of inedible meals, occasional service of spoiled food cannot be said to deprive inmates of basic nutritional needs.").

Plaintiff has brought a claim based on unsanitary kitchen conditions and food contamination of which both McLauren and Davis were allegedly aware. Plaintiff's allegations with respect to this claim are sufficient to pass threshold review. Count 4 will therefore proceed against McLauren and Davis.

### Count 5 – Emergency Buttons

Regardless of how Plaintiff characterizes his claim against April and McLauren for failing to provide emergency buttons in the cells (e.g., as a failure-to-protect or conditions-of-confinement claim), the allegations must at least suggest that this failure to install emergency buttons in the cellblock amounted to deliberate indifference. Allegations that a defendant disregarded "a generalized risk of violence [are] not enough" because jails are inherently dangerous places. *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (citing *Brown v. Budz*, 398 F.3d 904, 909, 913 (7th Cir. 2005); *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004)).

Instead, Plaintiff must establish that these defendants consciously disregarded a "tangible threat to his safety or well-being." *Id.* (citing *Grieveson v. Anderson*, 538 F.3d 763 (7th Cir. 2008); *Billman v. Indiana Dep't of Corrections*, 56 F.3d 785, 788 (7th Cir. 1995) (noting distinction between actual and feared exposure)). Further, "the conditions presenting the risk must be 'sure or very likely to cause...needless suffering,' and give rise to 'sufficiently imminent danger.'" *Id.* (citations omitted). The First Amended Complaint does not support a claim against April or McLauren under this standard. Count 5 will therefore be dismissed without prejudice.

### Pending Motions

Plaintiff has filed a Motion for Status/Notice of Amended Claim (Doc. 16), which is hereby **DENIED** at moot. This order provides Plaintiff with the status of this case.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNTS 1** and **5** are **DISMISSED** without prejudice against all defendants for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNT 3** shall **PROCEED** against **ARAMARK**, **DAVIS**, and **MCLAUREN**.

**IT IS FURTHER ORDERED** that **COUNT 4** shall **PROCEED** against **DAVIS** and **MCLAUREN**.

**IT IS FURTHER ORDERED** that **COUNT 2,** which is unrelated to the other claims in this action, is **SEVERED** into a new case against **BRANDY, BARBARA, DEBORAH**, and **ROBIN**.

The claims in the newly severed cases shall be subject to screening pursuant to 28 U.S.C. § 1915A after the new case number and judge assignment is made. In the new cases, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order;
- The First Amended Complaint (Doc. 15);
- Plaintiff's motion to proceed *in forma pauperis* (Doc. 2); and
- Plaintiff's trust fund account statement (Doc. 10).

Plaintiff **will be responsible for an additional $350 filing fee** in the newly severed case.[3] No service shall be ordered in the severed case until the § 1915A review is completed.

**IT IS FURTHER ORDERED** that the *only claims remaining in this action are Counts 1, 3, 4, and 5, though Counts 1 and 5 are being dismissed herein*.

**IT IS FURTHER ORDERED** that Defendants **KENNY, NICHOLS**, **ST. CLAIR COUNTY JAIL, BRANDY, BARBARA, DEBORAH**, and **ROBIN** are **TERMINATED** from

---

[3] Pursuant to 28 U.S.C. § 1914, effective May 1, 2013, an additional $50.00 administrative fee is also to be assessed in all civil actions, unless pauper status is granted.

14

**this** action with prejudice.

**IT IS FURTHER ORDERED** that Defendant **ST. CLAIR COUNTY**, **MASSEY**,[4] **JOHNSON**, and **APRIL** are **DISMISSED** from this action without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that, as to **COUNTS 3** and **4**, the Clerk of Court shall prepare for **ARAMARK**, **DAVIS**, and **MCLAUREN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint, and this Memorandum and Order to the defendants' place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings. Further, this entire matter shall be

---

[4] To the extent Sgt. Massey is the same person as Sgt. Masseo, he is dismissed with prejudice.

**REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 3, 2018**

*s/J. Phil Gilbert*
**U.S. District Judge**