UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANTRELL A. TEEN,

        Plaintiff,

        v.

ST. CLAIR COUNTY JAIL MEDICAL STAFF,
PHILLIP MCLAURIN, ARAMARK, MARY
DAVIS, JANE DOE, ST. CLAIR COUNTY, SGT.
MASSEY, C/O JOHNSON, and NURSE APRIL,

        Defendants.

Case No. 17-cv-594-JPG

**MEMORANDUM AND ORDER**

This matter comes before the Court on the Report and Recommendation ("Report") (Doc.

94) of Magistrate Judge Gilbert C. Sison recommending that the Court grant the motion for

summary judgment filed by defendant Phillip McLaurin (Doc. 70) and grant in part and deny in

part the motion for summary judgment filed by defendants Aramark and Mary Davis (Doc. 66).

If the Court accepts the Report, the only claim left for trial would be Count 4 against Davis.

The parties have objected and have responded to their opponents' objections (Docs. 99, 102, 104,

106, & 108). The Court also considers various other pending motions (Docs. 92 & 93).

**I.      Report Review Standard**

The Court may accept, reject or modify, in whole or in part, the findings or

recommendations of the magistrate judge in a report and recommendation. Fed. R. Civ. P.

72(b)(3). The Court must review *de novo* the portions of the report to which objections are

made. *Id.* "If no objection or only partial objection is made, the district court judge reviews

those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th

Cir. 1999).

## II.    Background

Plaintiff Antrell A. Teen filed this lawsuit complaining of several conditions to which he was exposed when he was a pretrial detainee at the St. Clair County Jail ("Jail") from December 2015 to April 2019.   The only claims remaining in this case are Count 3, a claim contesting the nutritional adequacy of the meals served at the Jail, and Count 4, a claim complaining of the sanitation observed in food preparation and service at the Jail.   Aramark was the organization providing food service for the Jail, and Davis was the Jail's food service director.   McLaurin was the Jail superintendent at all relevant times.

## III.   The Report

In the Report, Magistrate Judge Sison found uncontradicted evidence that the meals served at the Jail were well-balanced and had sufficient caloric, vitamin, protein, and carbohydrate levels.   He found that Teen's personal belief otherwise was speculation upon which no reasonable jury could render a verdict in his favor, especially in light of Teen's weight gain and the absence of any evidence of malnourishment during Teen's detention.   Magistrate Judge Sison further found insufficient evidence from which a reasonable jury could find Teen suffered an extended cold because of the poor nutrition of the Jail meals.   In light of the uncontradicted evidence that the Jail served inmates nutritionally adequate meals, Magistrate Judge Sison recommended granting summary judgment for the defendants on Count 3.

As for Count 4, Teen's claim that the preparation and serving of the food was unsanitary, Magistrate Judge Sison found there was a genuine issue of material fact about the sanitation conditions.   While the defendants presented evidence of sanitary conditions and practices, Teen and other inmates provided first-hand observations about repeated, if not regular, occurrences of

2

conditions that they say threatened their health and well-being—insect-infested black-eyed peas, juice served out of a cooler containing trash, a black substance (possibly mold) on the drink cooler nozzle, workers' not wearing gloves, dirty food trays, and service of uncooked food, food with hair in it, and food with old food particles in it.   Magistrate Judge Sison found this was sufficient to allow Count 4 against Davis, who was responsible for the sanitary food service conditions, to go forward.   Magistrate Judge Sison found, however, that there was insufficient evidence to show McLaurin was personally involved in the lack of sanitary food service conditions.   Accordingly, Magistrate Judge Sison recommended granting summary judgment for McLaurin but not Davis on Count 4.

## IV.   Objections

With respect to Count 3, Teen contends Magistrate Judge Sison improperly resolved disputed facts about the nutritional adequacy of the meals Teen was served at the Jail.   He points to sworn declarations that the meals substantially deviated from Aramark's planned, nutritionally adequate menus because parts of the planned meals were inedible.   Specifically, he notes the evidence that the inmates received no fruits or any substitute for years and were regularly served watered down recipes, small portions, or inedible food, which prevented them from getting the planned nutritional value of the meal.

With respect to Count 4, Teen contends that McLaurin did, in fact, know about the unsanitary conditions from receiving Captain's Complaints (a step in the grievance procedure) and turn a blind eye to the nutritional inadequacies of the diet at the Jail.

Aramark and Davis contend that the inmate declarations Teen has submitted in support of his contention that there is a genuine issue of material fact are inadmissible because the

statements therein are not based on personal knowledge, and that, even if considered, they only

establish isolated instances. They also claim Teen is raising more factual allegations that he set

forth in his First Amended Complaint, which improperly expands this litigation, and that he has

not supported his claim of nutritional inadequacy or of future danger to his health with an expert

opinion or legitimate educational authority.

McLaurin asserts with respect to Count 3 that he was not personally involved in

providing a nutritionally inadequate diet because he relied on Davis to ensure detainees were fed

properly. He claims to have had no knowledge of a nutritionally adequate diet except for the

time Teen complained of small portions, at which point McLaurin followed through with dietary

services to fix that situation. With respect to Count 4, McLaurin argues that the sanitation

problems were isolated instances that did not amount to an unconstitutional deprivation.

## V.     Analysis

### A.     Count 3

The evidence Teen submitted in support of Count 3 is not enough for a reasonable jury to

find that what was served was nutritionally inadequate. To prevail on a nutrition claim, a

plaintiff must show that the deprivation of food was objectively sufficiently serious, that is, that

the deprivation denied him one of the minimal civilized measures of life's necessities. *Farmer

v. Brennan*, 511 U.S. 825, 834 (1994). Withholding of food may satisfy this standard depending

on the amount and duration of the deprivation. *Williams v. Shah*, 927 F.3d 476, 480 (7th Cir.

2019).

Teen has provided no evidence from which a reasonable jury could conclude that so

much of the food presented to him was inedible over an extended period of time that he was

effectively deprived of one of life's basic necessities. Indeed, on the edible food provided, he managed to gain 50 pounds over almost four years. Instead, he has shown that over that period, occasionally some food items were undercooked, spoiled or inedible for other reasons. For example, in a three-year period, on one occasion in 2016 there were maggots in black-eyed peas served to Teen, and on one occasion in 2017 detainees observed trash in a cooler containing juice for the detainees. He complains of lack of fruit (except when detainees were given a sack lunch when they went to court appearances), but states that he decided voluntarily to stop drinking the juice provided as a substitute for fruit because most of the juice coolers had a black substance on the nozzle. Other detainees continued to consume the juice. On other more frequent occasions, food was not served in the portions Teen preferred or was unappetizing or inedible for other reasons, but no evidence shows those instances were frequent enough to deprive Teen of adequate nutrition overall. Furthermore, the situation improved after Teen's May 2018 grievance hearing about meal content. In fact, there is no evidence that the nutritional content of the edible parts of the meals, when considered as a whole, provided a nutritionally inadequate diet. Without such evidence of the nutritional value of the edible food that was served, no reasonable jury could find it was nutritionally inadequate in violation of Teen's constitutional rights.

B.    Count 4

Among other things, Davis objects to Magistrate Judge Sison's conclusion that Teen has been exposed to an increased risk of future danger from unsanitary food preparation and service conditions in the Jail, arguing that Teen has not presented any evidence of physical or psychological injury or increased risk of future harm.

A pretrial detainee may recover for unsanitary food preparation or service conditions by showing an official's unreasonable response to "conditions posing an unreasonable risk of serious damage to the prisoner's future health." *Henderson v. Sheahan*, 196 F.3d 839, 846-47 (7th Cir. 1999); *Byrd v. Hobart*, 761 F. App'x 621, 624 (7th Cir. 2019). To withstand summary judgment on a claim based on the threat of future injury, a detainee must show to a degree of reasonable medical certainty that he actually faced an increased risk of injury. *Gray v. Hardy*, 826 F.3d 1000, 1007 (7th Cir. 2016).

Magistrate Judge Sison found that Teen could show an increased risk to his future health, but the Court disagrees. As Magistrate Judge Sison found, it is a close call whether a reasonable jury could find that the instances of unsanitary conditions in the food preparation and service at the Jail amounted to a constitutional deprivation. There is evidence of maggots in the black-eyed peas, trash in the drink cooler, insufficiently cooked food, hair and bits of old food in the new food, kitchen workers' not wearing gloves, masks, or beard guards, and generally dirty kitchen conditions. However, Teen has not been exposed to those conditions since he was transferred from the Jail to Menard Correctional Center in April 2019. There is no evidence he suffered any physical or psychological harm while he was at the Jail, and there is no evidence the conditions he suffered at the Jail continue to expose him to an increased risk of future harm. He simply does not fall into the category of exposures to conditions—like second-hand cigarette smoke or asbestos—that increase a risk of future harm even after the exposure is over, *see Helling v. McKinney*, 509 U.S. 25, 33 (1993); *Henderson*, 196 F.3d at 852, or ongoing exposures to conditions—like unsanitary prison kitchen conditions or infestations of rodents and birds—that that pose an ongoing threat to future health, *Gray v. Hardy*, 826 F.3d 1000, 1007 (7th Cir.

6

2016); *Byrd*, 761 F. App'x at 624.   Teen has simply failed to make a showing that he suffered an increased risk of harm, or to even suggest he may be able to make such a showing in this case. For this reason, the Court will reject Magistrate Judge Sison's recommendation as to Count 4 and will instead grant summary judgment for the defendants.

## VI.     Conclusion

For the foregoing reasons, the Court:

- **ADOPTS in part** and **REJECTS in part** the Report (Doc. 94);

- **OVERRULES** Teen's objection (Doc. 99);

- **SUSTAINS** Aramark's and Davis's objection (Docs. 102);

- **ADOPTS** the Report to the extent it recommends granting summary judgment on Count 3 and **GRANTS** summary judgment for McLaurin, Aramark, and Davis on Count 3;

- **REJECTS** the Report to the extent it recommends denying summary judgment on Count 4 and, instead, **GRANTS** summary judgment for McLaurin and Davis on Count 4;

- **DENIES as moot** Teen's motions for recruitment of counsel (Doc. 92) and for trial subpoenas (Doc. 93) in light of the fact that there will be no trial; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:   March 25, 2020**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**

7